**WALLING, Adm'r of Wage and Hour Division, U. S. Dept. of Labor, v. ARCTIC CIRCLE EXPLORATION, Inc.**

Civil Action No. 507.

District Court, W. D. Washington, N: D.
March 21, 1944.

Douglas B. Maggs, Sol., and Irving J.
Levy, Associate Sol., U. S. Dept. of Labor,
both of Washington, D. C., and Dorothy M.
Williams, Regional Atty., and Willard S.
Johnston, Sr. Atty., both of San Francisco,
Cal., U. S. Dept. of Labor, for plaintiff.

Laube & Laughlin and George Guttormsen, both of Seattle, Wash., for defendant.

BLACK, District Judge.

This action was brought by the Administrator of the Wage and Hour Division, United States Department of Labor, to enjoin the defendant under the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., upon allegations of the plaintiff that although the defendant was engaged in production of gold ore which was regularly shipped in interstate commerce that the defendant (1) had failed to pay overtime at not less than one and one-half times the regular wage, and (2) that the defendant had regularly failed to keep adequate records as required by the Act.

Following pre-trial conferences the cause was tried upon its merits and following the submission of testimony was submitted upon written argument.

The defendant is engaged in placer mining operations about one hundred fifty miles northeast of Nome and also maintains an office in Seattle. Approximately seventy-

five per cent. of its employees were Eskimos residing in the vicinity of the Alaskan operations and unable to read or write the English language and, according to defendant, unable to comprehend anything but the most simple terms or arrangements. The remainder of the employees were brought from various places in Alaska and in part from the United States proper.

The company, therefore, was confronted with very unusual problems. The defendant's operations necessarily by reason of the rigors of the climate were substantially confined each year to about June to October, inclusive, the employees working seven days a week, working regularly ten to twelve hours a day, depending upon the particular work they were doing, so that the regular work week ranged between seventy and eighty-four hours. It was very difficult and very expensive for the company to secure employees to supplement the resident Eskimos, all of whom were regularly employed.

■ Although defendant contends otherwise, the court can come to no other conclusion than that the defendant during all of the times involved in this action was engaged in the production of gold for, and which at all times was actually shipped in, interstate commerce. The defendant itself and its mining employees, therefore, are and have been within the Act.

In 1938 the defendant did not comply with the Act at all, the manager claiming that he at no time in 1938 realized that the Act applied to operations such as those of the defendant in the Alaskan location where such were carried on. The defendant likewise made no attempt to comply with the law in 1939 for the reason, as claimed by the manager, that it was his understanding that even if the defendant were technically subject to the provisions of the Act that it was his understanding from what he had been told in Washington, D. C., by government officials that such Alaskan operations as the defendant's need not expect any probable enforcement where the wage paid exceeded $200 a month. In 1939, as well as thereafter, each employee of the defendant, with the possible exception of occasionally a part-time clerk or stenographer, received well over $200 per month and probably, even as to the Eskimos, well over $250 a month.

Beginning with 1940 the defendant seemingly recognized the advisability of making an apparent compliance, for it adopted the practice of paying one hour a month to each employee at one rate, which it contends was the regular or base rate, and then paying the employees for all the rest of the hours of the month one and one-half times such alleged base or regular rate. In 1941 the same practice was followed except that one hour a week was the alleged regular or base rate and the balance of the seventy or eighty-four hours a week were alleged to be overtime at one and one-half the rate for such first hour. Beginning in 1942 shortly after this action was instituted the defendant had each of its employees sign an agreement that the regular or base rate was a certain amount and that the overtime rate was one and one-half such amount but without specifying how many hours a week the base rate covered. The defendant submitted testimony that such written agreements were entered into in 1942 pursuant to plans and decisions arrived at several months before the suit was started and that the agreements in many instances were actually signed in Alaska some time before word reached the manager of the service of summons and complaint in Seattle about May 11th of that year.

The defendant in 1942 upon its books provided for payment for forty hours a week to each of its employees at the regular or base rate provided for in the agreement and one and one-half times such amount for all hours over forty each week. However, the defendant actually paid each of its employees not only such amounts for the forty hours and for the overtime hours but also at the same time paid each employee for each of the first forty hours worked an amount equal to the difference between its contended base and overtime rate. This the defendant entered on its books as a bonus. There was no written agreement which called for such or referred to it. The employees, however, understood that they were to receive the rate which included the purported "bonus." As to the Eskimos, who made up about seventy-five per cent. of the employees, they were in effect told they would get the same wages they had received theretofore, it not being considered practical by defendant to even attempt to explain to them the forty-hour and overtime arrangement nor the bonus arrangement for the first forty hours.

Both sides submitted such practice put in effect after the institution of this action to the court for decision herein.

Kisä

It is the contention of the government that in 1940 and 1941 the one hour arrangement per month or per week was merely a bookkeeping manipulation and that in fact the one hour instead of being paid for at the regular or base rate was paid for at two-thirds of the base rate and that all of the other hours were merely paid for at the regular rate and that there was actually no overtime payments. It is the contention of the government that the method instituted in 1942 has to be viewed from the standpoint of what was said orally as well as what was written and from what was actually paid and on such basis the plaintiff contends that the employees were paid the regular rate, both during the forty hours and the overtime period and that the alleged agreed overtime rate was the regular rate and that the alleged agreed base rate was merely two-thirds of such regular rate, which two-thirds was supplemented by the hourly bonus.

Prior to 1942 the defendant did compensate some of its ditching, cookhouse and other employees on a monthly basis, which the plaintiff contends was in violation of the Act as not providing for at least time and one-half for the overtime hours. Beginning with 1942 that aspect of the case was terminated.

The defendant company did at all times it was purporting to comply with the Act have notices posted that it was making payments in compliance with the wage-hour laws but no such notice stated that one hour a month or week constituted the regular period and the balance of the work week or month overtime, nor beginning in 1942 did any notice state that the regular period was of any different length than theretofore. Moreover, it was not the practice for vouchers to accompany the monthly checks to explain the method of computing regular time and overtime.

After having considered the evidence, the statutes, regulations and decisions I can come to no other conclusion than that there certainly never was any sufficient agreement or contract between the defendant and its Eskimo employees to authorize the novel arrangements in force either before 1942 or beginning in 1942. It is clear from the evidence that there never was any meeting of minds between the defendants and its Eskimo employees for other than a regular rate per hour, regardless of whether such was during the forty-hour period per week or thereafter. Likewise, it is very doubtful that if as to the White employees there was ever any sufficient meeting of the minds to any other arrangement than the same hourly rate of payment, regardless of hours worked. I am not unmindful of the statement signed about October, 1941, by the employees to the effect that they had received regular and overtime payment during the season then ended pursuant to the agreement of employment. If any employees did in October, 1941, understand what the arrangement had been previously I am not ready to hold under the showing made that, even aside from the hour a week feature, they could in October make an agreement that would refer back to the preceding May. In any event under the evidence presented there is no basis to suppose the Eskimos understood such arrangement.

From all the evidence it would appear that the defendant, at least at all times prior to May, 1942, realized the method it was employing was not in compliance with the law or regulations, but merely hoped that its system might suffice to avoid steps by the Wage and Hour Division to enforce the Act and regulations against it.

While the defendant's records to some extent have been inadequate, they have not concealed the arrangements the defendant has had and I am satisfied that no order or injunction is in any wise necessary as to the keeping of records as I am confident the defendant will in the future keep records as required.

Under the law and evidence I feel obliged to hold that the plaintiff is entitled to an injunction prohibiting the continuance in the future of the aforesaid past wage practices. The arrangements and methods it has heretofore employed, even if subject to contract, of which I am not convinced, were in any event not pursuant to contracts as approved by the Supreme Court in Walling v. A. H. Belo Corp. 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716, as there was no sufficient meeting of the minds authorizing such arrangements. The hour a week or month arrangement originally used by defendant even if agreed to would seem lawful only if it is reasonable to consider one hour a week or one hour a month a likely regular working period per week or month. The mere statement of such, it seems to me, decides it contrary to the contentions of the defendant.

■■ As to the bonus method inaugurated in 1942, inasmuch as the defendant actually paid its employees at the same rate per hour any week they worked less than forty hours as it paid them during the hours in excess of forty, the actual payment made instead of the bookkeeping method must under the evidence presented be considered the regular rate. The written agreement must be deemed supplemented by the oral understanding or assurance as to the bonus so that the writings and the oral agreement form the contract. In the case of the Eskimos their understanding that they were to receive the same rate as theretofore and the implication from the payment which was actually the same for less than forty hours as well as over must be deemed to constitute the contract by the performance. The court recognizes there might be some difficulty in advising the Eskimos why they should receive less for the first forty hours than thereafter. Under the Belo decision, supra, the defendant, of course, can contract with its men for a base rate under forty hours and for at least one and one-half times the base rate for overtime even though the base rate is substantially smaller than the hourly rate theretofore paid so long as it is not below the minimum.

But payment should be made in accordance with any such agreement, which agreement, of course, under the Belo decision, can provide for a guarantee of at least a definite minimum per week.

In the light of the substantial amounts which the defendant has regularly paid its satisfied employees it is unfortunate, of course, that the defendant chose to depend upon the devices it has used instead of contracting with its employees similarly to that approved in the Belo decision. Injunction as to the keeping of records is denied; otherwise injunction will issue as above indicated.

It cannot be reasonably contended that substandard wages were paid by defendant. The entire record is to the contrary. The evidence further shows that to the Eskimos particularly the continuance of the defendant's ability to employ them is extremely vital.

■ It is indisputable that the defendant could have complied with every technicality of the Act and lawfully paid the employees far less than it did. It is likewise indisputable that the defendant under the Belo decision, supra, could have arrived at practically the same total for each employee for the month by paying them some less for the first forty hours than was done and some more for the overtime. Since under the evidence the defendant could not afford to pay its employees more a month than it did and continue financially able to operate it is most regrettable that the defendant elected to follow the methods it did. The employees, even the Eskimos, could have been told that the rate for the first forty hours was a specific amount and that the rate for the overtime hours was increased by one-half. But the Act as passed does under the decisions apply to defendant's operations. Whether or not operations such as defendant's in isolated districts of Alaska which pay substantial wages should, by reason of the shortness of the season and the unusual problems presented be exempted from the Act is for Congress to determine. Congress to date has not seen fit to exempt them.

When this action was brought the court understood from plaintiff's counsel that the only purpose was to have the defendant enjoined in the future from failing to pay the required overtime and from failing to keep adequate records. The Administrator insists that he is entitled to all the relief prayed for in his complaint but as stated above I do not consider injunction required as to the records.

It will be understood, therefore, that the injunction to be entered shall only apply to the matter of compliance with the law as to future wage practices.

Considering all the evidence I am satisfied such an injunction is necessary to secure compliance by defendant with the Act in accordance with the controlling decisions of the courts. Defendant's manager seemed determined to avoid the Act and yet at the same time very excellently compensate the men. His excuse that the employees, particularly the Eskimos, could not be made to understand why overtime hours should receive an increased rate, is not overly convincing. While perhaps requiring patience and some effort such certainly could have been made clear to men worth the wages paid by this defendant. I think the manager's mind was fixed from the beginning that the Act should not apply to Alaska for operations such as here involved in isolated districts and that he resolved to himself, in effect, amend the Act as far as de-

fendant was concerned since Congress did not do it. Perhaps Congress should amend it. But even so he must wait until it does so.

This decision is not intended to encourage the institution of any actions in connection with the elapsed periods. Aside from other considerations such would seem unwise indeed if due thought be given to the need of the employees, particularly of the resident Eskimos, for the company to be able in future to supply them with work.